INGRAHAM, J. (concurring).
—The extremely unfortunate position in which plaintiffs now find themselves, and the manifest injustice of the position taken by the defendants in exercising the power given to them by the contract to terminate, rescind, and annul it at any time before the withdrawal of the full sum of $151,327.45, naturally incline us to find, if possible, some method by which we can prevent such injustice being done to the plaintiffs. We are, however, confronted with the contract that the plaintiffs have themselves executed. They have seen fit to agree that the defendants’ testator, his executors, administrators, successors, or assigns, shall have this right to terminate, rescind, and annul the agreement at any time before the full amount agreed to have been paid to the defendants’ testator from the business shall have been actually paid to them ; and it is that agreement that we are required to enforce. We cannot make a new agreement for the parties, nor can we deliberately overlook or disregard the express terms of the contract that the parties have made.
This provision of the eleventh clause of the contract is explicit, and gives to the testator and his executors the full and uncontrolled power, in their discretion, to terminate the agreement at any time prior to the final withdrawal of the sum specified. The evidence shows that that provision and its effect were clearly understood by the plaintiffs before they signed the instrument. Thus, witli their eves open, understanding what they were doing, they made the agreement. Having máde it, the testimony is that, at the same time, another and .independent agreement was mad© between the plaintiffs and defendants’ testator, and we are asked to enforce that agreement. I think it clear that the latter was not one that was in conflict with this written agreement that the par-' ties then executed, but one that was entirely independent of it, and not at all inconsistent with it. The testimony is that the; plaintiffs objected to executing the proposed written agreement, oni the ground that, while they would trust Mr. Garry, the contingency of his death was presented to them; and then the question, came up as to what the executors would do in case of Mr. Garry’s death, the contract giving to the executors the same power that! Mr. Garry had to terminate the contract. To meet the objection, it was not proposed to take away from the executors this power to rescind the contract. It was not proposed to restrict them as to what they could or could not do as between the plaintiffs and the executors in case of Garry’s death. Mr. Garry said to the plaintiffs that he would make a codicil to his will, directing his executors to have the business continued, provided the plaintiffs would comply with the contract; and with that agreement plaintiffs were content, and signed the contract. This understanding with Mr. Garry as to the codicil that he would execute would not be at all inconsistent with the discretion that the executors had to *67 terminate the contract. Garry made no agreement with the plaintiffs that his executors would not exercise the power. He simply simply said that, by a codicil, he would direct his executors not to exercise it upon certain conditions; and as between the plaintiffs and the executors, it left them in the position by w hich the executors had the power to rescind the contract, the power being expressly given to them by the contract that was signed after Garry had agreed that he would make a codicil by which he would leave direction to his executors as to how they should exercise the power given them by the contract. The only effect that the execution of such a codicil would have as between the plaintiffs and the executors would be that, under it, the executors would have the power to continue the business if, in their discretion, they "considered it for the benefit of the estate. It might be that one of the executors or one of the legatees or beneficiaries under Garry’s will would have the right to ask the court to compel the executors to carry out Garry’s directions ; but these plaintiffs would not be in a po sition, under the contract they had signed, to ask the court for a judgment restraining the executors from enforcing this express provision by which power was given to them to rescind the contract.
A different question would have been presented had the plaintiffs, before the executors had formally rescinded the contract, tendered to the executors the amount that was unpaid of the sum that Garry or his estate was entitled to withdraw from the business, and then insisted upon the contract for the continuation of the partnership being performed. That, however, was not done. The amount had not at the time of the trial been withdrawn from the business, and, under the express provisions of the contract in force as between these plaintiffs and the executors, the executors had the power to terminate the contract, and the existence of such a codicil would not justify the court in taking away from the executors the power expressly given to them by the agreement.
I can see no escape from the conclusion that this judgment was right, unless we are prepared to make an entirely new contract for the parties, instead of enforcing the one that they have made. I concur, therefore, in the affirmance of the judgment.